***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before the Deputy Commissioner and the briefs and arguments of the parties before the Full Commission. The parties have not shown good grounds to reconsider the evidence and the Full Commission affirms with modifications the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered into by the parties as:
 STIPULATIONS
1. On or about June 15, 2009, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The Defendant-Employer is insured by Stonewood Insurance Company. *Page 2 
3. Plaintiff alleges an injury to his back on or about June 15, 2009.
4. An employment relationship existed between Plaintiff and Defendant-Employer at the time of Plaintiff's injury.
 *********** EXHIBITS
The following exhibits were admitted into evidence at the hearing before the Deputy Commissioner:
 (a) Stipulated Exhibit 1: Pre-Trial Agreement
 (b) Stipulated Exhibit 2: Plaintiff's Medical Records
 (c) Stipulated Exhibit 3: Industrial Commission Forms
 (d) Stipulated Exhibit 4: Discovery Responses
 (e) Stipulated Exhibit 5: Recorded Statement
 *********** ISSUES
The following issues were presented at the hearing before the Deputy Commissioner:
 (a) Whether Plaintiff suffered a compensable aggravation of his pre-existing back condition due to an incident at work on June 15, 2009?
 (b) If so, to what benefits, if any, is Plaintiff entitled?
 ***********
Based upon the preponderance of the evidence of the record, the Full Commission makes the following: *Page 3 
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, Plaintiff was 44 years old. Plaintiff has a ninth grade education.
2. Plaintiff began working for Employer-Defendant, Freedom Electric, on June 5, 2009. Ten days later, on June 15, 2009, Plaintiff alleges he was injured at work.
3. Plaintiff had problems with his back before going to work with Employer-Defendant. Plaintiff did not tell Employer-Defendant about these problems at the time he was hired. Plaintiff also denied having had a DWI on his job application, but later admitted that statement was not true.
4. On June 11, 2009, four days before the alleged date of injury, Plaintiff had been unable to come to work because of severe pain in his left hip, buttock, and left leg region. He sought treatment that day with his family physician, Dr. Gonzolo Cabral. However, Plaintiff denied in his recorded statement having any problems with his back prior to the alleged work injury on June 15, 2009. He also did not reveal during the statement that he had seen Dr. Cabral just four days before the alleged incident.
5. The project coordinator and Plaintiff's supervisor, Chris Wheaton, testified that Plaintiff had complained of back and hip pain from the beginning of his working for the Employer-Defendant on June 5, 2009. Mr. Wheaton explained that, when Plaintiff called in on June 11, 2009, he stated he could not work because his back and hip were hurting. When Plaintiff returned to work on June 15, 2009, Mr. Wheaton stated that he still appeared to be in pain that morning before the alleged work lifting incident. Mr. Wheaton confirmed that the area of the back and hip Plaintiff complained of prior to the date of injury was the same general area to which Plaintiff pointed during the hearing before the Deputy Commissioner as being hurt at *Page 4 
work. Mr. Wheaton also testified that Plaintiff told him several times that his back problems were due to a prior accident and were not due to his work with Employer-Defendant.
6. Sam Wheeler, the Safety Director for Employer-Defendant, testified that he learned of Plaintiff being out of work on June 11, 2009, from Chris Wheaton. Plaintiff then called Sam Wheeler on June 12, 2009, three days before the alleged work injury, asking for information about workers' compensation. Plaintiff told Mr. Wheeler that he did not have health insurance and that is why he asked about workers' compensation. Mr. Wheeler confirmed with Plaintiff that his injury was due to an old accident that had never healed, and he informed Plaintiff that workers' compensation did not apply.
7. Keith Schmidt was a co-worker electrician with Plaintiff. His job was to drive the work van to pick up Plaintiff and to take him to the job site. Mr. Schmidt testified that Plaintiff had told him that he had a prior injury to his back that shut down his legs and caused them to give out. He also testified that Plaintiff had asked him how long he had to be an employee before he qualified for health insurance. On June 11, 2009, Plaintiff called Mr. Schmidt and told him not to pick him up from work that morning. He told Mr. Schmidt that his back was hurting and that he could not get out of bed because his legs would not work.
8. Plaintiff did not go to work on June 11, 2009. He was seen that day by Dr. Gonzolo Cabral. Plaintiff complained of pain in the left sacroiliac joint area with "difficulty walking or standing." Plaintiff also reported "radiation to the posterior aspect of the left lower extremity." Significantly, Plaintiff told Dr. Cabral, "he has had similar pain in the past." Dr. Cabral removed Plaintiff from work until June 15, 2009, and he also scheduled Plaintiff for a follow-up appointment on June 18, 2009. *Page 5 
9. Plaintiff was out of work for his back and left hip and leg pain from June 11, 2009 until June 15, 2009, the alleged date of injury. On June 15, 2009, Plaintiff claimed he was working with electrical conduit pipe, approximately 15 to 20 feet long. A co-worker was cutting the pipe below him, and he was pulling up on the pipe. At the hearing before the Deputy Commissioner, Plaintiff claimed the pipe weighed 25 to 30 pounds. During his recorded statement, Plaintiff had told the adjuster that the pipe only weighed "a few pounds" or maybe 10 pounds. Plaintiff claimed he felt a pop in his back, and pain in his left low back and left leg. Plaintiff claimed this occurred at approximately 4:30 in the afternoon.
10. After the alleged incident, Plaintiff testified that Chris Wheaton came to him and asked him if he wanted to go to the doctor. Plaintiff refused several times, and asked only to be allowed to lie in the work truck. Then, on the way home, Plaintiff asked co-worker Keith Schmidt to take him to the Emergency Room at Wilson Medical Center.
11. Plaintiff was seen at Wilson Medical Center on June 15, 2009. On the form titled "Neck/Back Injury/Pain," Plaintiff reported a history of back injury or pain. Under "Cause of Injury," Plaintiff reported "last week had pain same area."
12. Plaintiff subsequently followed up with Dr. Cabral on June 18, 2009, his regularly scheduled follow-up date from the pre-injury June 11, 2009 visit. Dr. Cabral's note states, "This is a middle-aged man who comes in for follow-up appointment regarding back pain." The note then documents that Plaintiff returned to work until he decided to do some heavy lifting "which led to sudden relapse, recurrence of the pain."
13. Plaintiff was next seen for treatment of his back at the Wilson Medical Center Emergency Department on July 2, 2009. Plaintiff reported "`herniated disc' causing `pain' in l[ef]t low back/hip and down l[ef]t leg x3 wks." In the past medical history section, Plaintiff *Page 6 
again reported "herniated disc x3 weeks." Three weeks prior to this visit was exactly June 11, 2009, the date that Plaintiff called into his employer saying he could not work because of his unrelated back pain and left leg weakness, and the date that Plaintiff first sought treatment with Dr. Cabral.
14. On that same day, Plaintiff reported on the "Emergency Physician Record" at Wilson Medical Center that he had a prior history of: "prior back injury"; "prior back pain"; "chronic x6 weeks." This is consistent with Plaintiff's report to Dr. Cabral on June 11, 2009 that he had similar pain in the past.
15. Dr. Gonzolo Cabral testified at his deposition as an Internal Medicine specialist. He is not a spine or orthopedic specialist, and he testified he would defer to the opinions of orthopedic surgeons or neurosurgeons.
16. Dr. Cabral saw Plaintiff on June 11, 2009, for back and left leg pain not related to any injury at work. Dr. Cabral testified that Plaintiff complained of pain in the sacroiliac joint area on the left side. He explained that this is where the joint connects the spine to the pelvis. Plaintiff also complained of pain radiating to the posterior aspect of the left leg, "which is consistent with what we call radicular pain," and would "indicate some involvement of a nerve root at the level of the spinal cord." Dr. Cabral also confirmed that Plaintiff was complaining of pain all the way down the back of the left leg.
17. Dr. Cabral testified that Plaintiff returned on June 18, 2009, complaining of increased pain and numbness in his left leg. Dr. Cabral sent Plaintiff for an MRI, which showed pre-existing disc desiccation in Plaintiff's spine. When asked by Plaintiff's attorney whether he had an opinion about whether the alleged lifting incident at work caused or aggravated Plaintiff's *Page 7 
pre-existing back condition, Dr. Cabral responded: "I cannot say with certainty. I mean, it's consistent with, but it could be caused or have aggravated an existing condition."
18. Dr. Cabral was presented with other medical records at his deposition from Plaintiff's visits to the Wilson Medical Center Emergency Department on June 15, 2009 and July 2, 2009, which he had not seen before. He testified that these complaints of pain were consistent with his documentation of a relapse or recurrence of symptoms from the pre-existing injury. He was also presented with testimony from the hearing before the Deputy Commissioner of co-worker witnesses who reported Plaintiff complaining of back pain and leg weakness prior to the alleged date of injury. Given that additional information, Dr. Cabral was asked whether he could express an opinion to a reasonable degree of medical certainty whether Plaintiff's incident at work more likely than not substantially aggravated or exacerbated his preexisting back condition. He responded, "I don't think I can. I don't think I can." However, on redirect, Dr. Cabral testified that the incident on June 15, 2009 aggravated Plaintiff's pre-existing condition and made it worse. Based upon the preponderance of the evidence and taken as a whole, the Full Commission finds that the opinions of Dr. Cabral are uncertain and contradictory, and therefore are given little weight.
19. Dr. Kurt Voos testified at his deposition as a board certified specialist in orthopedics and spinal surgery. Plaintiff was first seen in Dr. Voos' office on July 2, 2010, over a year after the alleged incident at work. Dr. Voos never actually saw Plaintiff personally. Plaintiff was only seen by Dr. Voos' physician's assistant.
20. Dr. Voos testified that, when Plaintiff was seen by his P.A., the impression that Plaintiff gave was that he did not have any low back or left leg symptoms prior to his alleged incident at work. When Plaintiff filled out his intake questionnaire, he listed the date of onset of *Page 8 
symptoms as "six, blank, 2009," meaning that Plaintiff did not put down a specific date of injury. Plaintiff neglected to document on the intake questionnaire that he had prior back and leg problems.
21. Dr. Voos testified that there are many different things that can cause back symptoms or the findings on Plaintiff's MRIs besides lifting at work, and that patients can have waxing and waning of their symptoms without any actual permanent aggravation or acceleration of their underlying condition.
22. Dr. Voos was presented with medical records from Plaintiff's visits to the Wilson Medical Center Emergency Department on June 15, 2009, and July 2, 2009, which he had not seen before. He was also presented with testimony from the hearing before the Deputy Commissioner of co-worker witnesses who reported Plaintiff complaining of back pain and leg weakness prior to the alleged date of injury. Given that additional information, Dr. Voos was asked whether he could express an opinion to a reasonable degree of medical certainty whether Plaintiff's incident at work more likely than not substantially aggravated or exacerbated his preexisting back condition. He responded, "I think that's almost an impossible question to answer . . . it's almost impossible to say one versus the other there." However, on redirect, Dr. Voos testified, "I think he exacerbated an underlying back condition." Based upon the preponderance of the evidence and taken as a whole, the Full Commission finds that the opinions of Dr. Voos are uncertain and contradictory, and therefore are given little weight.
23. Dr. Gurvinder Deol testified at his deposition as an expert in orthopedic spine surgery. Dr. Deol personally examined and treated Plaintiff on two separate occasions. He first saw Plaintiff on referral from Dr. Cabral on July 23, 2009, a little over a month after the alleged incident at work. *Page 9 
24. On direct examination by Plaintiff's counsel, Dr. Deol testified "it appears he (Plaintiff) had an exacerbation of the underlying preexisting condition." However, on cross-examination, Dr. Deol stated that his opinions were based on what Plaintiff had provided to him, and that his opinions could be affected by additional or different information. Then, Dr. Deol agreed that Plaintiff had neglected to inform him that he had a prior history of back, left hip, or left leg symptoms before the alleged incident at work. Dr. Deol was not aware that Plaintiff had complained of left hip, back, and left leg pain and weakness to co-workers prior to the June 15, 2009 alleged incident. He also was not aware that Plaintiff had called into his employer on June 11, 2009 stating he could not come to work because of left hip and leg pain and weakness. Dr. Deol then testified that these pieces of evidence made it "more difficult to say when the initiating incident happened."
25. Dr. Deol testified that an individual with a back condition can have waxing and waning of symptoms without any significant aggravation of their actual medical condition. In line with this, Dr. Deol explained that the symptoms for which he first saw Plaintiff on July 23, 2009 were essentially the same as the symptoms that Plaintiff complained of to Dr. Cabral on June 11, 2009 — including difficulty walking or standing, and radiation to the posterior aspect of the left leg. He testified that the symptoms of left back and hip pain, as well as left leg pain and numbness, were consistent with the MRI results from June 24, 2009. Dr. Deol then explained that, if Plaintiff was having these symptoms before the incident at work, it would suggest that Plaintiff's back condition shown on the MRI preceded the alleged incident at work.
26. Dr. Deol then pointed out that Plaintiff had atrophy in his quadriceps muscle at the first visit on July 23, 2009. He explained it was unlikely that Plaintiff would have developed atrophy in his quadriceps muscle over such a short period of time from the relatively small *Page 10 
herniation shown on his MRI. This fact indicates that the herniation likely preexisted the alleged incident on June 15, 2009.
27. Dr. Deol was then presented with medical notes from Wilson Medical Center on June 15, 2009, noting pain "last week, same area," and Dr. Cabral's note of June 18, 2009, regarding a "relapse" or "recurrence" of symptoms. Based on the additional information provided, Dr. Deol testified that Plaintiff was not likely suffering a new problem on June 15, 2009, but that it was the "same ongoing problem" he saw Dr. Cabral for on June 11, 2009. He was then asked: "And can you tell within a reasonable degree of medical certainty whether more likely than not whether this was just a flareup of his prior problem or whether he had a significant aggravation or exacerbation as a result of anything at work?" Dr. Deol responded, "It appears to be a flareup of a prior problem."
28. Dr. Deol was then shown the Wilson Medical Center ED notes from July 2, 2009. He confirmed that the symptoms Plaintiff complained of at that time were essentially the same symptoms he complained of to Dr. Cabral on June 11, 2009. He also testified that the reports in that note of Plaintiff having suffered a herniated disc three weeks before [June 11, 2009], as well as the notation that his back pain was chronic times six weeks, would both support an opinion that Plaintiff's back symptoms were a continuation of the condition for which he saw Dr. Cabral on June 11, 2009, not a new injury.
29. Dr. Deol went on to explain that the two pieces of evidence that were the crux to this case were (1) that Plaintiff had left leg pain before the alleged incident at work, and (2) the muscle atrophy in Plaintiff's quadriceps. He was then asked:
 And based on what we've seen in terms of the medical records and the atrophy of the quads, are you able to a reasonable degree of medical certainty to say that more likely than not that plaintiff suffered any significant aggravation or exacerbation of his *Page 11 
preexisting medical condition as a result of this alleged incident on June 15th of 2009?
He responded, "It does not appear that he did."
30. Based upon the preponderance of the evidence of the record and the credible medical evidence of record, the Full Commission finds that the opinions of Dr. Deol are entitled to greater weight than the opinions of Dr. Cabral and Dr. Voos. Dr. Deol is a spine surgeon, in contrast to Dr. Cabral who is a Family Medicine specialist and who expressly deferred to the spine specialists in this case. Dr. Deol actually examined and treated Plaintiff, and he did so less than six weeks after the date of the incidents in question, in contrast to Dr. Voos who never actually saw Plaintiff and whose P.A. did not see Plaintiff until a year after the incidents in question. The Full Commission finds that Dr. Deol is in a superior position to render medical opinions about both causation and disability in this claim. Additionally, as stated above, the opinions of Dr. Cabral and Dr. Voos are uncertain and contradictory, and therefore are given little weight. While Dr. Deol's opinion also changed during his deposition, it was upon consideration of additional evidence, and he did not change his opinion again during his testimony.
31. Based upon the preponderance of the evidence of the record and the credible medical evidence of record, the Full Commission finds that Plaintiff has failed to establish that his pre-existing back condition was aggravated by his lifting of pipe at work on June 15, 2009.
 ***********
Based on the foregoing Stipulations and Findings of Fact, the Full Commission concludes as follows: *Page 12 
 CONCLUSIONS OF LAW
1. The greater weight of the competent evidence of record fails to establish that Plaintiff's alleged incident at work on July 15, 2009 aggravated his pre-existing back condition, and thus Plaintiff's claim is not compensable. N.C. Gen Stat. § 97-2(6).
 ***********
Based upon the foregoing Stipulations, Findings of Fact, and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits related to his alleged incident at work on June 15, 2009 is DENIED.
2. Each side shall bear its own costs.
This the ___ day of October 2011.
 S/___________________ PAMELA T. YOUNG CHAIR
CONCURRING:
 S/___________________ DANNY L. McDONALD COMMISSIONER
 S/___________________ TAMMY R. NANCE COMMISSIONER